Roger TURBE, Appellant,

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Virgin Islands Water and Power Authority.**

No. 90–3843.

United States Court of Appeals, Third Circuit.

Argued April 23, 1991.

Decided July 11, 1991.

Desmond L. Maynard (argued), Charlotte Amalie, St. Thomas, U.S.V.I., for appellant.

Rhys S. Hodge, (argued), Barbara J. Twine–Thomas, Charlotte Amalie, St. Thomas, U.S.V.I., for appellee Virgin Islands Water and Power Authority.

Before BECKER, SCIRICA and ALITO, Circuit Judges.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this case from the District Court of the Virgin Islands, plaintiff Roger Turbe challenges a judgment on the pleadings entered in favor of the Virgin Islands Water and Power Authority ("WAPA"). Turbe alleged that WAPA's negligent failure to repair street lights was the proximate cause of a criminal assault against him. We will affirm because we believe

WAPA was under no legal duty to protect Turbe from criminal attack.

## I.

Turbe alleges that on July 6, 1986, at approximately 11:15 P.M., he was attacked near his home by a naked man wielding a machete. He suffered various injuries and filed suit against WAPA and the Government of the Virgin Islands. Turbe alleged that his injuries resulted from defendants' negligent failure to repair the street lights in the area of the attack, despite knowing that they were broken. According to the complaint, Turbe "would have been able to see this assailant and avoid his violent attack if the street lights directly overhead and in the vicinity had been lit. They, however, were not working and had not been working for some time, despite numerous complaints by local residents."

After both defendants filed answers to the complaint, the Government moved for judgment on the pleadings under Fed.R. Civ.P. 12(c). Turbe did not respond to this motion, and the district court entered judgment in favor of the Government. Turbe has not appealed from that judgment. WAPA then filed a motion for judgment on the pleadings, asserting that the complaint failed to state a claim upon which relief could be granted. The district court granted WAPA's motion without opinion, and this appeal followed. The district court had jurisdiction under V.I.Code Ann. tit. 4, § 32(a) (Supp.1990). We have jurisdiction under 28 U.S.C. § 1291 (1988).

WAPA styled its motion as one for a "Judgment on the Pleadings dismissing the Complaint" pursuant to both Rule 12(b) and Rule 12(c). A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading. A Rule 12(c) motion for judgment on the pleadings may be filed after the pleadings are closed. Consequently, because WAPA filed its motion after it had already filed an answer, the motion must be considered a Rule 12(c) motion. Nevertheless, Rule 12(h)(2) provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings. In this situation, we apply the same standards as under Rule 12(b)(6). *See, e.g., Ad–Hoc Committee of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir.1987); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987); *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 182 (7th Cir. 1986); *Slotnick v. Garfinkle*, 632 F.2d 163, 165 (1st Cir.1980); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1367, at 515 (1990).

Therefore, we must accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff. We can affirm the district court only if no relief could be granted under any set of facts that could be proved. *Unger v. National Residents Matching Program*, 928 F.2d 1392, 1394–95 (3d Cir. 1991). Our review is plenary. *Id.* at 1394.

## II.

■ In the absence of local laws to the contrary, the American Law Institute's various Restatements of the Law are the rules of decision in the Virgin Islands. V.I.Code Ann. tit. 1, § 4 (1967). If the Restatement does not govern, we look to the common law "as generally understood and applied in the United States." *Id.* In order to establish a claim of negligence, the plaintiff must demonstrate that the defendant owed the plaintiff a legal duty, that the defendant was negligent, and that the defendant's actions were the legal cause of the plaintiff's injury. *See* Restatement (Second) of Torts §§ 281, 328 A (1965).

WAPA maintains that it owed no legal duty to plaintiff, and that its failure to repair the street lights cannot be considered the proximate cause of Turbe's injuries. We will affirm because on the facts alleged in this complaint, WAPA did not owe Turbe a duty to repair the street lights at issue. Consequently, we do not reach any questions regarding the foreseeability of the attack, or the degree to which WAPA's actions might have been a causal factor.

The nature of the legal duty owed by a defendant is generally a question of law. *See* Restatement § 328B(b). In this case, we must decide whether WAPA can be liable when the failure to repair street lights may have been a factor leading to a criminal attack upon a pedestrian. WAPA first contends that it can never be sued for the negligent operation of street lights. It asserts that its decisions whether or not to repair broken lights are completely discretionary and can never subject it to tort liability. WAPA points to statutory authorization providing that it has "the power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid, and such determinations shall be final and conclusive for all purposes." V.I.Code Ann. tit. 30, § 105(a)(13) (1975). WAPA contends that this provision relieves it of all liability for negligence in its operation of street lights.

Although we believe WAPA owes no duty on the facts alleged in this case, we do not adopt its broad position. We do not believe this general statement of WAPA's power was intended to immunize it from all tort liability arising from the failure to keep its facilities and equipment in working order. Lawsuits against WAPA are expressly authorized by statute. *See* V.I. Code Ann. tit. 30, § 105(a)(4) (1975) (WAPA has capacity to "sue and be sued"). WAPA has a limited form of immunity—it may be sued, but a victorious plaintiff cannot force it to pay any judgment entered. The Virgin Islands Code provides that:

> All property including funds of the Authority shall be exempt from levy and sale by virtue of an execution, and no execution or other judicial process shall issue against the same nor shall any judgment against the Authority be a charge or lien upon its property.

V.I.Code Ann. tit. 30, § 111(a) (1975).

We have interpreted § 111(a) as permitting WAPA to refuse to pay judgments entered against it. *Concepcion v. Soto,* 519 F.2d 405 (3d Cir.1975). But this provision does not grant full immunity to WAPA. Thus, a plaintiff may be able to satisfy a judgment against WAPA by relying on WAPA's liability insurance, if any exists. *Id.* at 406. Absent explicit statutory exclusions, we decline to afford WAPA complete immunity for failure to repair its equipment.

Although we reject WAPA's broad claims of immunity, we find that Turbe has not stated a claim upon which relief can be granted. WAPA can be held liable in this case only if it owed a legal duty to Turbe on the facts alleged in the complaint. Turbe points to no explicit statutory provision requiring WAPA to repair broken street lights. Instead, he relies on common law duties as set forth in the Restatement. In the absence of immunity, WAPA can be subjected to common law liability. However, Turbe has sued WAPA for failing to provide sufficient lighting on a particular street. Ordinarily, mere failure to provide protective services does not lead to common law tort liability. *See* Restatement § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.").

The Restatement provides several exceptions to this rule. Affirmative duties to aid or protect can be imposed if the defendant has a "special relationship" with the plaintiff. *See* Restatement § 314A (duty to aid or protect); § 314B (duty to protect endangered or hurt employee); §§ 315–320 (duty to control the conduct of third persons), § 344 (duty of possessor of land held open to the public). For example, we have recognized that under Pennsylvania's application of § 344, a possessor of land holding it open to the public can be liable when inadequate lighting is the proximate cause of a foreseeable criminal attack. *See Kenny v. Southeastern Pennsylvania Transportation Authority,* 581 F.2d 351 (3d Cir.1978), *cert. denied,* 439 U.S. 1073, 99 S.Ct. 845, 59 L.Ed.2d 39 (1979). In that case, a public transportation system was held liable when inadequate lighting on a subway platform was a substantial causal factor in the rape of a patron. In this case, though, Turbe has

not alleged any "special relationship" with WAPA that would impose a similar duty of protection.

Rather, Turbe relies on § 323 of the Restatement. This section, sometimes referred to as the "Good Samaritan" provision, provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

This provision restates the traditional rule that "[o]ne who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard,* 233 N.Y. 236, 239, 135 N.E. 275, 276 (1922). Under § 323, liability is imposed under certain circumstances when the defendant provides services he should recognize are necessary for the protection of another. Turbe argues that once WAPA has undertaken to provide lights on a particular street, it is liable for any injuries that may result from the failure to keep those lights in good repair.

▌ Provided a defendant is not immune, § 323 is generally applied to public entities as well as private individuals. *See, e.g., Patentas v. United States,* 687 F.2d 707, 715 (3d Cir.1982) (applying federal maritime law); *Sowell v. United States,* 835 F.2d 1133, 1134 (5th Cir.1988) (Louisiana law); *Neal v. Bergland,* 646 F.2d 1178, 1182 (6th Cir.1981), *aff'd on other grounds,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983); *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806–808

(Minn.1979); *Adams v. State,* 555 P.2d 235, 240–41 (Alaska 1976). WAPA asserts that this suit is barred by the "public duty" doctrine, under which an individual may not sue upon a duty that is owed only to the public in general. We have recognized that the public duty doctrine has been questioned or abolished in some states. *See Perez v. Government of the Virgin Islands,* 847 F.2d 104, 106 (3d Cir.1988). Nevertheless, the doctrine, as expressed in Restatement § 288(b), remains the rule of decision in the Virgin Islands. *Id.* at 107.[1] In *Perez,* we found that the Government of the Virgin Islands could not be held liable for failing to enforce statutes and regulations governing the insurance industry.

By its terms, however, § 288(b) plainly applies only to duties arising under legislative enactments or administrative regulations. Thus, it does not apply on its face to duties arising independently under the common law. We did not discuss this situation in *Perez,* because we considered the public duty doctrine only as it related to the government's failure to carry out statutory or regulatory requirements. But we adopted the general common law principle that the public duty doctrine does not prevent a member of the public from suing a governmental entity when there is a "special relationship" between the parties. *Id.* at 105. We have not previously considered the Virgin Islands' public duty doctrine in the context of § 323 liability. As the Supreme Court of Minnesota has noted, the doctrine traditionally does not bar suits against public entities when a basis for Good Samaritan liability exists. *See Cracraft v. City of St. Louis Park,* 279 N.W.2d 801, 806–808 & nn. 9, 11 (Minn. 1979). In these situations, courts recognize that the defendant owes a "special duty" to the plaintiff. *Id.* at 806.[2]

---

1. Restatement § 288 provides:

    The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively ... (b) to secure to individuals the enjoyment of rights or privileges to which

they are entitled only as members of the public.

2. We have cited *Cracraft* with approval in discussing the scope of the public duty doctrine under Virgin Islands law. *See Perez,* 847 F.2d at 105.

As we note below, though, the requirements of § 323 have not been met in this case. Consequently, we will assume without deciding that the public duty doctrine does not limit § 323 when its requirements are otherwise satisfied. We will also assume that WAPA should have recognized that the street lighting at issue was necessary for the protection of pedestrians in the area. We need not decide whether street lighting is the kind of service covered by § 323. Under subsections (a) and (b) of § 323, liability may be imposed only when the defendant's negligence increases the risk of harm to the plaintiff, or the plaintiff suffers harm in reliance on the defendant's provision of services. The facts alleged in this case do not state a claim under either subsection.

Turbe has not stated a claim based upon detrimental reliance. This claim arises when a plaintiff has changed his position in reasonable reliance on the defendant's provision of protective services, and is thereby injured when the defendant fails to perform those services competently. For example, a plaintiff might forego other protective services in reliance on the defendant's actions. A commonly cited instance of such liability is *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), where the Supreme Court held that the Coast Guard had a duty to repair the lights in a lighthouse. As the Court held:

> The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light ... and *engendered reliance* on the guidance afforded by the light, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover that fact and to repair the light or give warning that it was not functioning.

*Id.* at 69, 76 S.Ct. at 126 (emphasis added). Similarly, in *Abdallah v. Caribbean Security Agency*, 557 F.2d 61 (3d Cir.1977), we held that the failure to fulfill a contractual obligation to repair a burglar alarm was a possible basis for tort liability under Virgin Islands law. Although we did not discuss the source of the legal duty in *Abdallah*, it is apparent from the facts that detrimental reliance was a possible source of duty in that case.

■ There is no such reliance here. Turbe does not allege that he changed his position in any way in response to the existence of street lights. Nor does he allege that WAPA should have reasonably foreseen such reliance. The Restatement does not define the precise contours of § 323(b) liability, but we believe it requires that the plaintiff's reliance must be reasonably foreseeable by the defendant under the circumstances. *See, e.g., Nallan v. Helmsley–Spear, Inc.*, 50 N.Y.2d 507, 522–23, 429 N.Y.S.2d 606, 615–16, 407 N.E.2d 451, 460 (1980). As we held in *Perez*, when a defendant is a public entity, the mere existence of a statutory duty does not necessarily create enforceable rights. *Cf. Cracraft*, 279 N.W.2d at 807 (In suits alleging negligent inspection by public entities "[r]eliance on the inspection in general is not sufficient. Instead, the reasonable reliance must be based on specific actions or representations which cause the persons to forego other alternatives of protecting themselves."). Section 323 is an exception to the general rule that affirmative duties of protection do not exist. Therefore, a defendant should not be held liable under § 323(b) unless it was reasonable to foresee that the plaintiff would rely upon the defendant's continued provision of services necessary for the plaintiff's protection. Here, even if Turbe had alleged actual reliance, nothing in the complaint suggests that WAPA had any reasonable indication that pedestrians would forego other protective measures in response to the existence of street lighting.

Nor does the complaint pass muster under § 323(a), which permits a cause of action when the defendant's actions have "increased the risk of harm." Turbe asserts that WAPA's failure to repair the street lights increased the risk of harm because it permitted criminals to commit crimes under the cover of darkness. However, § 323(a) does not impose liability whenever the risk

of harm would have been less had a defendant provided protective services in a competent manner. When protective services are performed negligently, the risk of harm to the beneficiary will always be greater than when those services are performed competently. By definition, the plaintiff would have received a greater amount of protection in the latter situation. Thus, if we were to accept Turbe's interpretation of § 323(a), a defendant would potentially be liable every time he discontinued services necessary for the protection of others without providing notice.

Instead, § 323(a) applies only when the defendant's actions increased the risk of harm to the plaintiff relative to the risk that would have existed had the defendant never provided the services initially. Put another way, the defendant's negligent performance must somehow put the plaintiff in a worse situation than if the defendant had never begun the performance. As we have noted when interpreting § 324A(a), a companion provision to § 323(a), to prevail under a theory of increased risk of harm a plaintiff must "identify sins of commission rather than omission." *Patentas v. United States*, 687 F.2d 707, 716 (3d Cir.1982) (interpreting Restatement in the context of federal maritime law).[3] In *Patentas*, the complaint alleged that the Coast Guard had increased the risk of an oil tanker explosion by not discovering dangerous conditions during an inspection or ordering subsequent corrective measures. We held that § 324A(a) was not satisfied because the Coast Guard had not affirmatively increased the risk of explosion, but instead had only failed to take certain preventive measures.

A similar distinction was drawn in *H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 159 N.E. 896 (1928). As here, *H.R. Moch* involved allegations that a public utility failed to provide protective services. In that case, a warehouse burned down in part because the private company that provided water to the city had failed to maintain sufficient pressure in the fire hydrants. The case is often cited for its refusal to recognize third-party beneficiary contractual liability, but it rejected Good Samaritan tort liability as well.

Judge Cardozo restated the principle that "[t]he hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all," but recognized the important distinction between "misfeasance and nonfeasance." *Id.* at 167, 159 N.E. at 898. He noted that once a duty has been recognized, acts of both commission and omission can subject a defendant to tort liability, but that the distinction is critical in determining whether a particular duty will be recognized under the Good Samaritan rule:

> If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward. So the surgeon who operates without pay is liable, though his negligence is in the omission to sterilize his instruments; the engineer, though his fault is in the failure to shut off steam; the maker of automobiles, at the suit of some one other than the buyer, though his negligence is merely in inadequate inspection. The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good.

*Id.* at 167–68, 159 N.E. at 898 (citations omitted). The court affirmed the dismissal of the complaint because the water company had not launched a force or instrument

---

3. Section 324A provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

of harm, but instead had only failed to facilitate the prevention of harm that occurred through other causes.[4]

Likewise, WAPA's failure to repair the street lights did not "launch a force or instrument of harm," but is alleged only to have facilitated a third-party attack. As with the defendants in *Patentas* and *H.R. Moch*, WAPA is charged with failing to prevent harm when the risk of that harm would have been the same had WAPA never provided services to begin with. By contrast, if WAPA had negligently failed to repair a known defect in a light pole that fell on a pedestrian, a cause of action might exist because WAPA would have created the danger in the first place. *Cf.* Restatement § 324A, comment c (repairman hired by store would be liable if insecurely attached light fixture fell on customer). Similarly, WAPA might be liable if a motorist were blinded by a misplaced street light. *See, e.g., Baran v. City of Chicago Heights,* 43 Ill.2d 177, 251 N.E.2d 227 (1969) (city liable where misplaced street light rendered automobile's headlights less effective, causing motorist to drive past dead-end). Section 323(a) applies only when the defendant's actions have worsened the plaintiff's situation in some way. The facts alleged here do not satisfy this requirement.

### III.

Section 323 applies only when the plaintiff suffered harm because of reasonable reliance on the defendant's actions, or the

defendant's actions worsened the plaintiff's situation. In the absence of such circumstances, common law liability for failure to take affirmative protective measures is limited to situations involving a "special relationship" between the parties, and other similar exceptions. The complaint in this case satisfies none of these requirements. Consequently, we will affirm the judgment of the district court.

---

**4.** The court did not discuss whether detrimental reliance may have existed on the facts of the case. The first Restatement of Torts, which embodied the principle stated in *H.R. Moch,* did not expressly recognize a cause of action based upon detrimental reliance. Under the First Restatement,

> One who gratuitously renders services to another, otherwise than by taking charge of him when helpless, is not subject to liability for discontinuing the services if he does not thereby leave the other in a worse position than he was in when the services were begun.

Restatement of Torts § 323(2) (1936). The Second Restatement adopted this analysis in § 323(a), but also added a provision based upon detrimental reliance. In essence, § 323(b) is a more specific application of the general principle expressed in the First Restatement. When injury has been caused by reasonable reliance,

the defendant can be said to have put the plaintiff in a worse position.

The comment to § 323 of the Second Restatement expressly leaves open the question of whether liability should be imposed when a defendant has neither increased the risk of harm nor engendered detrimental reliance. The comment notes that

> Clear authority is lacking, but it is possible that a court may hold that one who has thrown rope to a drowning man, pulled him half way to shore, and then unreasonably abandoned the effort and left him to drown, is liable even though there were no other possible sources of aid, and the situation is made no worse than it was.

Restatement § 323, comment e. Whatever the merits of this position, the facts of this case do not warrant such an extension of the Good Samaritan principle.